IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **ABEL BRIZUELA,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:14cv799** |
| | ) | |
| **HAROLD CLARKE,** | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Petitioner Abel Brizuela, a state inmate who was convicted by a jury of animate object

sexual penetration in violation of Va. Code § 18.2-67.2, has filed a motion, by counsel, for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254, based on a number of claims of ineffective

assistance of counsel, as well as a claim that the evidence adduced at trial was insufficient to

convict petitioner of animate object sexual penetration.  Petitioner's specific ineffective

assistance of counsel claims are as follows:

> (1) Counsel was ineffective after trial for failing to report to the trial judge, and
> then for failing to raise on appeal, an allegation of juror misconduct;
> (2) Counsel was ineffective at trial for failing to challenge the victim's
> description of the sexual assault;
> (3) Counsel was ineffective at trial for failing to subpoena mental health records
> of the victim; and
> (4) Counsel was ineffective at trial for failing to subpoena records of Internet
> chats between the defendant and the victim and records of Internet chats
> between the victim and other individuals.

Petitioner filed his motion on June 25, 2014, and respondent filed a Rule 5 answer and motion to

dismiss on September 5, 2014.  Subsequently, however, petitioner was granted leave to file a

supplemental petition and petitioner, by counsel, filed a supplemental petition on November 26,

2014.  On March 2, 2015, respondent filed a Rule 5 answer and a motion to dismiss the

supplemental petition.  As the parties have fully briefed the issues presented and neither oral

1

argument nor an evidentiary hearing would aid the decisional process, respondent's motion is ripe for disposition.[1]  For the reasons that follow, respondent's motion to dismiss must be granted in all respects.

I.[2]

A brief summary of the factual and procedural history of the case places petitioner's motion in context.  Thus, the record reflects that in 2009, the complaining witness, Catherine Whisenant, was introduced to petitioner through an online dating website called plenttyoffish.com.  After communicating with each other over the telephone several times, petitioner and Ms. Whisenant met in person at an Applebee's parking lot in November 2009. Subsequent to that meeting, the two continued to communicate and in December 2009, the pair met for lunch at Applebee's.  Thereafter, petitioner and Ms. Whisenant continued to speak on the phone and communicate through the plentyoffish.com website.  Some of their conversations were sexual in nature.

On January 11, 2010, petitioner and Ms. Whisenant went on a date to Salsa's Restaurant, where they spent approximately three hours.  During the date, Ms. Whisenant consumed two jumbo margaritas and began to get an "uneasy feeling" about petitioner.  This unease apparently stemmed from the fact that petitioner represented online that he was 44 years old, when in fact he was 49 years old.  Nevertheless, when the date ended, Ms. Whisenant held hands with petitioner as he drove her back to her house.

---

[1] Although petitioner requests an evidentiary hearing with respect to his claim, where, as here, "the state-court record precludes habeas relief under the limitations of § 2254(d), a district court is not required to hold an evidentiary hearing." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1399 (2011) (internal quotation marks and citations omitted).

[2] The facts recited here are derived chiefly from the transcript of petitioner's trial.

When the pair arrived at Ms. Whisenant's home, she invited him inside. During this time, Ms. Whisenant's son was sleeping upstairs. Petitioner and Ms. Whisenant stood in the kitchen for about twenty minutes smoking cigarettes and talking. While in the kitchen, they had their arms around each other and kissed. Subsequently, Ms. Whisenant thanked petitioner for taking her out, told him she had a nice time, and then informed him that it was getting late and that she had to work the next day. It was at this point that petitioner began to make sexual advances towards Ms. Whisenant. She testified that "[a]t one point he grabbed my right hand, so I had a cigarette in my left hand. He brought it around behind me, because he was standing behind me and placed it, my hand, on top of his pants." Ms. Whisenant immediately grabbed her hand back but did not say anything further. In response to petitioner's continued sexual advances, Ms. Whisenant reiterated that she "wasn't ready" and needed to go to work the next day. Ms. Whisenant further testified that petitioner told her "I know you like me and I like you, so why fight it" and that she "might as well just go ahead and let it happen." According to Ms. Whisenant, petitioner eventually threw her against the wall in her kitchen, immobilizing her. He then fondled Ms. Whisenant's breasts, put his hand down her pants, and put his fingers inside her vagina. During this time, Ms. Whisenant testified that she was unable to resist because petitioner was "taller," "bigger," and "had me pinned. I could not move."

Petitioner then said "lets go upstairs" to which Ms. Whisenant responded, "no, my son is asleep." Ms. Whisenant testified that she did not cry out or fight petitioner because she feared that her son, who had mental and emotional difficulties, would wake up and would be "devastated" by the situation. She further testified that she was scared that petitioner would severely hurt her if she resisted. Thus, the pair went to the couch in the living room with petitioner's hand on Ms. Whisenant's neck and Ms. Whisenant disrobed. Petitioner then

performed oral sex on Ms. Whisenant, and the two had sexual intercourse. Afterwards, the pair went back into the kitchen and smoked a cigarette.

Once petitioner left, Ms. Whisenant took a shower, washed her clothes, and called petitioner on his cell phone; according to Ms. Whisenant, the reason for the call was to ensure that he did not remain in the vicinity of her home. Two days later, Ms. Whisenant told her friend, Marrot Blake, about the incident. According to Ms. Whisenant, petitioner had left numerous phone messages demanding that she meet him, and Ms. Whisenant was fearful for both her and her son's lives. The next day, Ms. Whisenant went to stay with another friend, Kim Hopkins, and told her about the incident. With Hopkins' encouragement, Ms. Whisenant called the police and reported the incident. On January 14, 2010, Ms. Whisenant was examined by a forensic nurse at Riverside Regional Medical Center. The nurse found redness in Ms. Whisenant's genital area that was consistent with sexual intercourse. The nurse further testified that a visual inspection of Ms. Whisenant's body did not reveal any abrasions, bruises, marks, or scratches on her back.

On or about May 17, 2010, a Grand Jury for the Matthews County Circuit Court charged petitioner with one count of committing rape by sexual intercourse accomplished through force, threat, or intimidation; one count of committing forcible sodomy by engaging in oral sex accomplished by force, threat, or intimidation; and one count of committing animate object sexual penetration accomplished by force, threat, or intimidation, in violation of Va. Code § 18.2-67.2. On March 9, 2011, a jury acquitted petitioner on the first two charges, but found petitioner guilty of the third count—animate object sexual penetration. On June 22, 2011, petitioner was sentenced to five years' imprisonment for this offense.

4

Thereafter, petitioner appealed his conviction, arguing that the evidence adduced at trial was insufficient to support his conviction of animate object sexual penetration. A three-judge panel of the Court of Appeals of Virginia denied this appeal on December 21, 2011.[3] Petitioner then appealed this ruling to the Supreme Court of Virginia. On July 5, 2012, the Supreme Court of Virginia affirmed the Court of Appeals of Virginia's decision[4] and on September 24, 2012, the Supreme Court of Virginia denied petitioner's motion for reconsideration of the ruling denying petitioner's appeal. One year later, on September 23, 2013, petitioner filed a petition for writ of habeas corpus in the Supreme Court of Virginia. In this petition, petitioner asserted the four ineffective assistance of counsel claims that are the subject of petitioner's present motion. On March 28, 2014, the Supreme Court of Virginia denied petitioner's habeas corpus petition in its entirety.[5] On April 26, 2014, petitioner filed a motion for reconsideration of this ruling which was also denied by the Supreme Court of Virginia on June 12, 2014.

Two days later, on June 14, 2014, petitioner filed his original § 2254 motion in this Court.[6] The bases for relief asserted in this motion are petitioner's four ineffective assistance of counsel claims that he asserted in his state court habeas petition. On September 5, 2014, respondent filed a timely Rule 5 answer and motion to dismiss. Thereafter, on September 25,

---

[3] *Abel Brizuela v. Commonwealth of Virginia*, No. 1349-11-1 (Va. Cir. Ct. Dec. 21, 2011), Respondent's Motion to Dismiss, Ex. 2.

[4] *Abel Brizuela v. Commonwealth of Virginia*, No. 1349-11-1 (Va. July 5, 2012), Respondent's Motion to Dismiss, Ex. 3.

[5] *Abel Brizuela v. Director of the Department of Corrections*, No. 1441926 (Va. March 28, 2014), Respondent's Motion to Dismiss, Ex. 6.

[6] Although this motion was not filed by counsel, petitioner requested that all mailings in the case be sent to Irena L. Karpinsky, Esq., even though she never filed a notice of appearance in this case.

2014, John C. Kiyonaga, Esq., filed a notice of appearance as petitioner's counsel.  On that day,

petitioner filed a motion for leave to supplement his § 2254 motion; this motion was granted on

October 2, 2014, and petitioner was given sixty days to supplement his § 2254 motion.[7]

Pursuant to this Order, on November 26, 2014, petitioner filed a supplement to his § 2254

motion.[8]  This supplement added a claim attacking the validity of petitioner's conviction on the

ground that the evidence was insufficient to support petitioner's conviction and also added an

argument that petitioner's first, third, and fourth claims raised in his original § 2254 motion are

subject to *de novo* review.  On March 2, 2015, respondent filed a Rule 5 answer and motion to

dismiss petitioner's supplemented § 2254 motion.  The parties have fully briefed respondent's

motion, and, as such, the motion is now ripe for disposition.

## II.

When a state court has addressed the merits of a claim raised in a federal habeas petition,

a federal court may not grant the petition based on the claim unless the state court's adjudication

is contrary to, or is based on an unreasonable application of, clearly established federal law, or is

based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Whether a state court

decision is (i) "contrary to" or (ii) "an unreasonable application of" federal law is based on an

independent review of each standard.  *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court determination runs afoul of the "contrary to" standard if it "arrives at a

conclusion opposite to that reached by [the United States Supreme] Court on a question of law or

if the state court decides a case differently than [the United States Supreme Court] has on a set of

---

[7] *Abel Brizuela v. Harold W. Clarke*, No. 1:14cv799 (E.D. Va. Oct. 2, 2014) (Doc. 15) (Order).

[8] The record reflects that petitioner completed serving his state sentence shortly after he filed his § 2254 motion and was in the custody of United States Immigration and Customs Enforcement ("ICE") at the time he filed his supplement to his § 2254 motion.

materially indistinguishable facts." *Id.* at 413. Under the "unreasonable application" clause, the writ should be granted only if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Importantly, this standard of reasonableness is an objective one. *Id.* at 410. Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts the presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (internal quotation marks and citations omitted). In other words, this standard "'is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015) (citing *Cullen*, 131 S.Ct. at 1398). The state court "must be granted a deference and latitude that are not in operation when the case involves review under the [applicable] standard itself." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). In sum, under § 2254(d), federal habeas review of a state court decision granting or denying habeas relief focuses, with deference, on the reasons and rationale of the state court decision. In this case, the Supreme Court of Virginia issued a decision on March 28, 2014, elucidating, in some detail, its reasons for denying petitioner's habeas corpus petition, and it is this decision that is the subject of the present § 2254 federal review.

### III.

As the Supreme Court of Virginia correctly recognized, the merits of petitioner's claims of ineffective assistance of counsel are governed by the settled and familiar two-pronged legal analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Specifically, to

prevail on a claim of ineffective assistance of counsel, petitioner must show first, that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Importantly, judicial review of counsel's performance in this context is "highly deferential." *Id.* at 689. Indeed, to establish that counsel's performance was objectively unreasonable, petitioner must overcome a strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. If petitioner demonstrates that counsel's performance was objectively unreasonable, *Strickland* next requires petitioner to establish that "the deficient performance prejudiced the defense." *Id.* at 687. Thus, in step two of the *Strickland* analysis, petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The prejudice analysis also requires consideration of whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In other words, counsel may be deemed constitutionally ineffective only if his or her "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Therefore, the focus of review here is whether the Supreme Court of Virginia's "application of the *Strickland* standard was unreasonable." *Jones*, 783 F.3d at 991.

## IV.

Petitioner first challenges the standard of review applicable to his first, third, and fourth claims of ineffective assistance of counsel, arguing that *de novo* review should displace the otherwise deferential § 2254 standard of review for these claims. Petitioner's contention is premised on two distinct arguments: (i) petitioner's ineffective assistance of counsel claims were procedurally defaulted in the state habeas proceedings below, and thus, *de novo* review is

8

warranted; and (ii) the Supreme Court of Virginia's decision was based on an incomplete record, thereby depriving its decision of the normal deference afforded to such decisions in the adjudication of § 2254 motions. Neither argument has merit.

Petitioner's first argument relies on the Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). In *Martinez*, the Supreme Court held that when an ineffective assistance of counsel claim could only be raised for the first time at initial-review collateral proceedings, then the failure to raise these claims in initial-review collateral proceedings "may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. Critically, however, a showing must be made of "cause and prejudice" arising from the procedural default; only then can a federal court "consider the merits of a claim that otherwise would have been procedurally defaulted." *Id.* at 1320. It is settled that Virginia "requires prisoners to bring ineffective-assistance-of-trial-counsel claims, for the first time, in state collateral proceedings." *Gray v. Pearson*, 526 F. App'x 331, 334 (4th Cir. 2013). Thus, petitioner contends that his first, third, and fourth ineffective assistance claims were procedurally defaulted below, and as such, *Martinez* requires application here of a more rigorous standard of review as to these claims.

This argument fails; petitioner overlooks a critical and necessary fact for his *Martinez* claim: *there was no procedural default below*. Indeed, it is uncontroverted that petitioner raised, on the merits, *all four* of his ineffective assistance of counsel claims in the state habeas proceedings below. By contrast, the Supreme Court is clear that the rule in *Martinez* is applicable only to those limited circumstances where a *procedural* default occurs. For example, in *Martinez*, the petitioner "did not respond" in his initial collateral proceedings, which formed the basis for his procedural default. *Martinez*, 132 S.Ct. at 1314. And in *Trevino v. Thaler*, 133

S.Ct. 1911, 1917 (2013), the Supreme Court further elucidated the circumstances constituting a procedural default, noting that such a default occurs when, "for example, the defendant[] fail[s] to raise a claim of error at the time or in the place that state law requires." These circumstances are far afield from the present case, where petitioner raised all four of his ineffective assistance counsel claims in the proper time and place. More importantly, the Supreme Court of Virginia considered, and rejected, all four claims on their merits.[9] In sum, it is clear that no procedural default occurred in this case.

Petitioner argues that the Supreme Court of Virginia's holdings that petitioner failed to "proffer" sufficient evidence to support his claims is the equivalent of a procedural default. Such an argument seeks to convert a merits challenge into a procedural default simply because petitioner was unsuccessful, and lacks legal or factual support. Indeed, accepting petitioner's argument would mean that anytime a petitioner failed to support his habeas claims with sufficient evidence, that claim would be procedurally defaulted and subject to a more generous standard of review in federal court. Such a result would untether *Martinez* from the limited moorings on which that decision is founded on, namely cases of actual procedural default where the merits of claims raised for the first time on initial collateral review are completely ignored because of a procedural barrier. *Martinez* is wholly inapplicable to situations where, as here, the Supreme Court of Virginia, in a five-page opinion, examined all of petitioner's ineffective assistance of counsel claims on the merits and did not find that petitioner forfeited a single claim due to a procedural barrier. Thus, contrary to petitioner's contention, *Martinez* is inapplicable, and petitioner's first argument for *de novo* review in this case must be rejected.

---

[9] *See Abel Brizuela v. Director of the Department of Corrections*, No. 1441926 (Va. March 28, 2014), Respondent's Motion to Dismiss, Ex. 6 (hereinafter "Supreme Court of Virginia Decision").

Petitioner's second argument fares no better. Petitioner relies on *Winston v. Kelly* ("*Winston I*"), 592 F.3d 535 (4th Cir. 2010) and *Winston v. Pearson* ("*Winston II*"), 683 F.3d 489 (4th Cir. 2012) to argue that the Supreme Court of Virginia adjudicated petitioner's habeas petition on an inadequate factual record. In *Winston I*, the Fourth Circuit held that if a record

> ultimately proves to be incomplete, deference to the state court's judgment would be inappropriate because judgment on a materially incomplete record is not an adjudication on the merits for purposes of § 2254(d) . . . New, material evidence, introduced for the first during federal habeas proceedings, may therefore require a de novo review of petitioner's claim.

*Winston I*, 592 F.3d at 555-56. Thus, in *Winston I*, the Fourth Circuit concluded that the state court had not adjudicated the relevant claim at issue on the merits for purposes of § 2254(d) because the state court ignored "new, material evidence that the state court could have considered had it permitted further development of the facts . . . ." *Id.* at 555. *Winston II* buttressed the ruling in *Winston I*, by holding that an adjudication on the merits for purposes of § 2254(d) does not occur when a petitioner is hindered from "producing critical evidence . . .by the state court's unreasonable denial of discovery and an evidentiary hearing." *Winston II*, 683 F.3d at 501.

Both *Winston I* and *Winston II* are inapposite to this case, as petitioner has failed to identify a single piece of *material* evidence that the Supreme Court of Virginia failed to consider. Indeed, petitioner's supplemental petition and response brief are devoid of the pieces of evidence that were missing from the record in the state habeas proceedings below, and how such evidence would have been material. Petitioner's argument instead seems to be that the Supreme Court of Virginia should have gone out of its way to ask petitioner if he wanted to conduct discovery. Neither Supreme Court nor Fourth Circuit precedent has crafted such an expansive right. *See Waters v. Clarke*, No. 2:11cv630, 2012 WL 4498914 at *8 (E.D. Va. Sept. 28, 2012) ("Although

11

[p]etitioner requested discovery in state court, his *properly advanced* evidence failed to demonstrate the need for discovery. Therefore, this Court cannot interpret the individualized analysis made by the Supreme Court of Virginia as anything other than an 'adjudication on the merits.'").[10]  Thus, unlike in *Winston I* or *Winston II*, this is not a case where a discovery request was submitted and denied concerning material evidence; rather, petitioner is attempting to convert those rulings into a freestanding discovery right for petitioners in habeas proceedings anytime a petition for habeas relief is denied.  This argument is unsupported by either *Winston I* or *Winston II*, and because petitioner has not identified or adduced any material evidence that was missing from the record below, petitioner's second argument for *de novo* review must also be rejected.

In sum, petitioner's contention that *de novo* review applies to his first, third, and fourth ineffective assistance of counsel claims must be rejected, and, as such, the regular § 2254 standard of review outlined in Part II, *supra*, applies to all of petitioner's claims.  It remains to now to analyze each claim using this standard of review.

## V.

## A.

Petitioner's first ineffective assistance of counsel claim is that his trial counsel was ineffective for failing to investigate and raise a potential claim of juror misconduct arising from statements from a juror who indicated after petitioner's trial that he or she was "not comfortable with how deliberations took place."  As to this claim, the Supreme Court of Virginia found that

---

[10] Importantly, according to the Rules of the Supreme Court of Virginia, "no discovery shall be allowed in any proceeding for a writ of habeas corpus . . . without prior leave of the court, which may deny or limit discovery in any such proceeding."  Rules of the Supreme Court of Virginia, Rule 4:1(5)(b).

petitioner was unable to satisfy either the *Strickland* performance or prejudice prong. With respect to the performance prong, the Supreme Court of Virginia found that once trial counsel was contacted by the attorney who represented the unidentified juror, trial counsel investigated the matter and determined there was no legitimate issue to raise because trial counsel learned that "the juror did not have an issue with the deliberations and stood by the verdict and sentence."[11] Thus, the Supreme Court of Virginia concluded that based on the record, including trial counsel's affidavit, trial counsel's performance did not fall below an objective standard of reasonableness, nor did any prejudice result from the error, as there was no indication that but for trial counsel's errors, there was a reasonable probability that the result of the proceeding would have been different.

On this record, the Supreme Court of Virginia's conclusion was certainly not an unreasonable application of *Strickland.* Indeed, it is well-settled that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996); *see also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed"). Petitioner has made no such proffer in this case, and has presented no evidence either that his trial counsel failed adequately to investigate the potential for juror misconduct—which the Supreme Court of Virginia concluded that trial counsel did—or that there was a reasonable probability that the result of the proceeding would have been different had trial counsel raised this issue either at trial or on appeal. Indeed, given the juror's statement standing by both the verdict and the sentence imposed, it is clear that petitioner cannot prevail on the *Strickland* prejudice prong.

---

[11] Supreme Court of Virginia Decision at 2.

In sum, petitioner's first claim of ineffective assistance of counsel must be rejected, especially in view of the "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

## B.

Petitioner's second ineffective assistance of counsel claim is that trial counsel failed to challenge Ms. Whisenant's trial testimony adequately in light of his assertion that it would have been physically impossible for him to have held her against a wall while simultaneously sexually assaulting her. Here again, the Supreme Court of Virginia found that petitioner failed to satisfy both *Strickland* prongs. Specifically, regarding trial counsel's performance, the Supreme Court of Virginia found that the trial transcript "demonstrates counsel could have reasonably determined he had no basis to challenge the victim's testimony as asserted by petitioner."[12] Moreover, the Supreme Court of Virginia found that Ms. Whisenant's testimony established that petitioner could have pinned her against the wall and proceeded to assault her sexually, and furthermore, that trial "counsel thoroughly cross-examined the victim as to how the sexual assault occurred." [13] Thus, the Supreme Court of Virginia concluded that trial counsel's performance did not fall below an objective standard of reasonableness and that, in any event, there was no showing that but for trial counsel's alleged errors, there was a reasonable probability that the result of the proceeding would have been different.

Once again, the Supreme Court of Virginia's conclusion was not an unreasonable application of *Strickland*. Indeed, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mirzayance*, 556 U.S. at

---

[12] Supreme Court of Virginia Decision at 2-3.

[13] *Id.* at 3.

124 (internal quotation marks and citations omitted).  This is so because it is "all too easy to second guess counsel's efforts after they have proven unsuccessful." *Meyer v. Branker*, 506 F.3d 358, 371 (4th Cir. 2007) (internal quotation marks and citations omitted).  In petitioner's case, trial counsel made a strategic decision not to cross-examine the victim regarding the alleged physical impossibility petitioner alleges; such a choice not only had a basis in the record, according to the Supreme Court of Virginia,[14] but more importantly, this decision was ultimately insignificant given that trial counsel thoroughly cross-examined the entirety of Ms. Whisenant's testimony.  Nor has petitioner identified how there is a reasonable probability that trial counsel's cross-examination on this point would have changed the outcome of the proceeding.  In view of the vast deference afforded to trial counsel's strategic decisions, in conjunction with the substantial deference afforded to state court decisions on adjudication of § 2254 motions, the Supreme Court of Virginia's conclusion with respect to this claim was not an unreasonable application of *Strickland*.

## C.

Petitioner's third claim of ineffective assistance of counsel is that trial counsel was ineffective for failing to subpoena Ms. Whisenant's mental health records.  In this regard, petitioner argues that these records became "fair game" when the prosecution introduced a page from Ms. Whisenant's diary that discussed her mental health issues and named two psychotropic drugs that she was taking.  Petitioner further contends that had trial counsel subpoenaed these records, trial counsel would have been able to raise reasonable doubt as to Ms. Whisenant's credibility.  The Supreme Court of Virginia found that this claim did not satisfy either *Strickland*

---

[14] This conclusion likely stems from Ms. Whisenant's testimony that petitioner used his legs to prevent her from moving while sexually assaulting her with his hands.  *See* Supreme Court of Virginia Decision at 3.

15

prong because petitioner failed to "proffer any evidence that the victim suffered from any mental health issues or was taking any psychotropic drugs before or at the time of the sexual assault."[15] Moreover, the Supreme Court of Virginia also found that petitioner "fails to demonstrate why the victim's mental state and any psychotropic drugs she may have been taking five days after petitioner sexually assaulted her rendered her mental health records, if they existed, relevant to her ability to testify."[16]

These conclusions are clearly not an unreasonable application of *Strickland*. As the Fourth Circuit has noted, although "there are times that a failure to investigate impeachment evidence can satisfy the prejudice prong, that is less likely to be the case than a failure to investigate direct evidence." *United States v. Mason*, 552 F. App'x 235, 239 (4th Cir. 2014). Indeed, this is especially true where, as in *Mason*, trial counsel "vigorously questioned" Ms. Whisenant regarding the "details of [her] account . . . ." *Id.* In other words, petitioner's claim is "further weakened by counsel's cross-examination of the witness at trial." *Id.*[17] More importantly, the diary page petitioner relied on was an entry from January 16, 2010—five days *after* the incident between petitioner and Ms. Whisenant occurred. Thus, this evidence would have been irrelevant to any drugs Ms. Whisenant was on at the time of the sexual assault. And, as the Supreme Court of Virginia noted, petitioner made no showing that Ms. Whisenant was on any mental health medications, including the psychotropic drugs mentioned in the diary page, while she was testifying either. Thus, the Supreme Court of Virginia's conclusion with respect to this claim was not an unreasonable application of *Strickland*. Trial counsel's failure to inquire

---

[15] Supreme Court of Virginia Decision at 4.

[16] *Id.*

[17] *See also* Supreme Court of Virginia Decision at 3 ("[C]ounsel thoroughly cross-examined the victim as to how the sexual assault occurred.").

into Ms. Whisenant's credibility using her mental records was yet another strategic choice that, in these circumstances, is "virtually unchallengeable." *Mirzayance*, 556 U.S. at 124. Moreover, petitioner has not made any showing whatsoever that had trial counsel subpoenaed Ms. Whisenant's mental health records and used them on cross-examination that trial counsel's examination of her credibility would have appreciably changed to the point such that there is a reasonable probability that the outcome of the proceedings would have been different. In sum, remaining mindful of the vast deference afforded to the Supreme Court of Virginia's decision, petitioner's third claim of ineffective assistance of counsel must be denied.

### D.

Petitioner's final ineffective assistance of counsel claim is that trial counsel was ineffective by failing to subpoena records from the dating website plentyoffish.com. Petitioner's argument is that these records would have established that Ms. Whisenant met another man on the website before she met petitioner and that this fact would have contradicted Ms. Whisenant's testimony that petitioner was the only man she had met or communicated with on the website. The Supreme Court of Virginia found that this claim also failed both *Strickland* prongs because petitioner failed to "proffer the Internet records or any evidence of what they would have shown."[18] Furthermore, the Supreme Court of Virginia attached importance to the fact that Ms. Whisenant "did not testify that petitioner was the only man she had met or communicated with on the website. Rather, she stated he was the first man she met online."[19]

Once again, the Supreme Court of Virginia's application of *Strickland* with respect to this claim was certainly not unreasonable. This ineffective assistance of counsel claim, like the

---

[18] Supreme Court of Virginia Decision at 5.

[19] *Id.*

previous claim, relates to the choices and tactics trial counsel chose to employ in attempting to impeach Ms. Whisenant's credibility. As already noted, demonstrating prejudice for such a claim is extremely difficult, especially considering that trial counsel thoroughly cross-examined Ms. Whisenant's testimony. Petitioner has not submitted or attached the relevant Internet records; as such, it is impossible to tell whether the Internet records would have contradicted or corroborated Ms. Whisenant's account. Petitioner also attaches importance to the fact that Ms. Whisenant's account remained active after the incident despite her testimony that she "shut everything down after everything had happened."[20] But petitioner's reliance on this fact is misplaced, as even assuming for purposes of this motion that Ms. Whisenant's account remained active after the incident, petitioner has not produced any evidence that she *used* the website after the incident or went on any more dates. Merely because she left her account intact does not contradict her statement that she "shut everything down" insofar as this statement plainly pertained to her *use* of the website.

In any event, petitioner clearly cannot satisfy the *Strickland* prejudice prong, as he has not and cannot show that trial counsel's failure to subpoena these records so impaired his cross-examination of Ms. Whisenant such that there is a reasonable probability that the result of the proceeding would have been different. In sum, as with petitioner's previous ineffective assistance of counsel claim, trial counsel's strategic choices in cross-examining Ms. Whisenant were not objectively unreasonable, and the Supreme Court of Virginia's conclusion to that effect was not an objectively unreasonable application of *Strickland*.

---

[20] Habeas Corpus Petition at 11A.

18

## VI.

Petitioner's final claim—that the evidence adduced at trial was insufficient for a jury to have convicted him of object sexual penetration—is asserted only in his supplement to his § 2254 motion.  As such, respondent contends that this claim is time-barred and must be dismissed without considering the merits of this claim.  According to respondent, petitioner's claim is time-barred because from December 24, 2012, the date petitioner's conviction became final, until September 23, 2013, the date petitioner filed his state habeas petition, 273 days passed.  And although petitioner's claim was tolled during the pendency of state habeas proceedings—from September 23, 2013 until June 12, 2014—an additional 167 days passed until November 26, 2014 when petitioner raised his insufficiency of the evidence claim in his supplement to his § 2254 motion.  Thus, when these totals are combined, a total of 440 days elapsed before petitioner raised this claim, which is 75 days beyond the one-year time limit established in 28 U.S.C. § 2244(d), which states:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review . . . The time during which a properly filed application for a State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In response, petitioner makes two arguments as to why his insufficiency of the evidence claim is timely: (i) that this claim relates back to timely-filed claims in his original petition; and (ii) in any event, equitable tolling precludes barring this claim based on the applicable statute of limitations.  These arguments are now addressed.

In *Mayle v. Felix*, 545 U.S. 644, 650 (2005), the Supreme Court held that an "amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when

it asserts a new ground for relief supported by facts that differ in both *time and type* from those
the original pleading set forth." *Id.* (emphasis added). The Supreme Court reached this result
based in large measure on the language in Rule 15(c)(2), Fed. R. Civ. P., which provides that
pleading amendments relate back to the date of the original pleading "when the claim asserted in
the amended plea[ding] arose out of the conduct, transaction, or occurrence set forth or attempted
to be set forth in the original pleading." *Id.* at 656 (internal quotation marks and citations
omitted). Thus, in *Mayle*, the Supreme Court found that claims arising out of "pretrial
statements" did not relate back to claims asserted in the original habeas petition, which related to
statements made during and after trial, because the pretrial statements "were separated in time
and type" and thus "would not relate back under the definition of 'conduct, transaction, or
occurrence' to which most Circuits adhere." *Id.* at 657. Ultimately, according to the Supreme
Court, "relation back depends on the existence of a common core of operative facts uniting the
original and newly asserted claims." *Id.* at 659 (internal quotation marks and citations omitted).
*See also Gray v. Branker*, 529 F.3d 220, 241 (4th Cir. 2008) (relation back was not warranted
when newly-asserted claim arose "from an entirely separate factual circumstance and create[d] a
new and distinct claim for relief").

The standard articulated in *Mayle* is admittedly imprecise, as there is no clear definition
as to what constitutes a "common core of operative facts." Respondent argues that petitioner's
insufficiency of the evidence claim is a much broader claim than any of his narrower ineffective
assistance of counsel claims because it attacks the evidence as a whole, instead of a singular
attorney error, and thus is predicated on a "new and distinct claim for relief." *Gray*, 529 F.3d at
241. In response, petitioner argues that his insufficiency of the evidence claim shares a
"common core of operative facts" with his ineffective assistance of counsel claims and more

specifically, his ineffective assistance of counsel claim arising out of trial counsel's error in failing to thoroughly cross-examine Ms. Whisenant's version of how the sexual assault took place. Petitioner argues that had trial counsel cross-examined Ms. Whisenant in the manner suggested by petitioner, this would have demonstrated the overall insufficiency of the evidence to convict him. Moreover, petitioner contends that these two claims are not separated in "time and type" as they both arise out of alleged errors that occurred during trial. *Mayle*, 545 U.S. at 650.

In any event, it is unnecessary to resolve the knotty question whether petitioner's insufficiency of the evidence claim is timely because even assuming, *arguendo*, that this claim properly relates back to claims asserted in petitioner's original habeas petition,[21] this claim clearly fails on the merits. Evidence is sufficient to support a conviction as long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). And a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

The Supreme Court recently has made clear just how much latitude federal courts must afford to jury verdicts in reviewing insufficiency of the evidence claims. In *Cavazos v. Smith*, 132 S.Ct. 2, 3 (2011), the Supreme Court held that a "reviewing court may set aside the jury's

---

[21] It is therefore unnecessary to reach or decide whether equitable tolling applies to this claim since for purposes of petitioner's motion it is assumed that this claim is timely because it relates back to claims raised in petitioner's original habeas petition.

21

verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Moreover, a

> federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Id.* (internal quotation marks and citations omitted). Importantly, and particularly pertinent to this case, the Supreme Court noted that "[w]hen the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review," petitioners have a very heavy burden to prevail on insufficiency of the evidence claims raised in § 2254 motions. The Supreme Court reiterated these principles in *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012), noting that "[w]e have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." First,

> on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.

*Id.* (internal quotation marks and citations omitted). Second, on habeas review, a federal court may overturn a state court decision "only if the state court decision was objectively unreasonable." *Id.* (internal quotation marks and citations omitted).

The application of this highly deferential standard to the present case compels the conclusion that petitioner's insufficiency of the evidence claim must fail. The Court of Appeals of Virginia[22] found that the jury properly credited Ms. Whisenant's testimony, especially because

---

[22] This claim was adjudicated on direct appeal, and not in state collateral proceedings, because since "1889, it has been the rule in Virginia that a court will not inquire into the sufficiency of the evidence in a habeas corpus case." *Valentine v. Young*, No. 27001, 2003 WL 21728873 at *2 (Va. Cir. Ct. Feb. 5, 2003). In any event, because the Court of Appeals of Virginia adjudicated

issues of credibility are matters "solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."[23] The Court of Appeals of Virginia also highlighted that Ms. Whisenant testified that petitioner pinned her against the wall so that she could not move before petitioner fondled her breasts and put his fingers into her vagina. In addition, the Court of Appeals of Virginia found that Ms. Whisenant did not cry out for fear of disturbing her son. Thus, as the Court of Appeals of Virginia correctly concluded, "[c]onsidering all the facts and circumstances, the victim's testimony was not so contrary to human experience as to render it unworthy of belief. The evidence was sufficient to prove beyond a reasonable doubt that [petitioner] was guilty of sexual penetration with an object."[24] Put another way, the Court of Appeals of Virginia concluded that a rational fact finder could have convicted petitioner for having sexual penetration with an object against the will of Ms. Whisenant by force, threat, or intimidation of or against Ms. Whisenant.[25]

Petitioner argues that the record is devoid of any evidence that he used force, threats, or intimidation to commit the offense, highlighting Ms. Whisenant's silence and the fact that she eventually engaged in sex with petitioner. But the Court of Appeals of Virginia credited the jury's finding that Ms. Whisenant's silence stemmed from fear for herself and her son, and found that there was trial record evidence that petitioner pinned Ms. Whisenant to the wall before committing the offense, constituting the predicate force, threats, or intimidation that led to the

---

petitioner's insufficiency of the evidence claim, this claim was "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d).

[23] *Abel Brizuela v. Commonwealth of Virginia*, No. 1349-11-1 (Va. Cir. Ct. Dec. 21, 2011), Respondent's Motion to Dismiss, Ex. 2 at 3.

[24] *Id.* at 4.

[25] *See id.* at 3.

sexual encounter.  In any event, petitioner's arguments require precisely the type of "fine-grained factual parsing" that the Supreme Court has prohibited in adjudicating insufficiency of the evidence claims, as this unduly impinges on the role of the jury as fact-finder.  *Coleman*, 132 S.Ct. at 2064.  To set aside a jury verdict in these circumstances would be to engage in the kind of Monday-morning quarterbacking that the Supreme Court has condemned.  *See Coleman*, 132 S.Ct. at 2064 ("Under the deferential federal standard, the approach taken by the Court of Appeals was flawed because it unduly impinged on the jury's role as factfinder."); *Cavazos*, 132 S.Ct. at 6 ("When the deference to state court decisions required by § 2254(d) is applied to the state court's already deferential review . . . there can be no doubt of the Ninth Circuit's error below.").  In sum, the Court of Appeals of Virginia's conclusion with respect to the sufficiency of the evidence supporting petitioner's conviction was not objectively unreasonable, especially in light of the fact that credibility determinations are exclusively the province of the jury.

Petitioner has one final argument with respect to this claim.  He contends that his conviction for object sexual penetration is illogical because the jury acquitted petitioner of rape and sodomy.  This argument is meritless and is foreclosed by Supreme Court precedent.  *See United States v. Powell*, 469 U.S. 57, 67 (1984) ("Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt[] beyond a reasonable doubt . . . This review should be *independent* of the jury's determination that evidence on another count was insufficient.") (emphasis added).

In sum, applying the necessary highly deferential standard to petitioner's insufficiency of the evidence claim, petitioner's claim must be rejected, as the Court of Appeals of Virginia's conclusion with respect to this claim was not objectively unreasonable.

24

## VII.

In sum, respondent's motion to dismiss must be granted in its entirety.

An appropriate Order will issue.

Alexandria, VA
June 18, 2015

/s/

_____
T. S. Ellis, III
United States District Judge